UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
BS Sun Shipping Monrovia,                            :
                                                     :
      Petitioner,                                  :      06 Civ. 839 (HB)
                                                     :
      -against-                                    :      **OPINION & ORDER**
                                                     :
Citgo Petroleum Corporation,                         :
                                                     :
      Respondent.                                  :
------------------------------------------------------X

**Hon. Harold Baer, Jr., District Judge:**

      Petitioner BS Sun Shipping Monrovia ("BS Sun") brought this action seeking a declaratory judgment and stay of arbitration against respondent Citgo Petroleum Corporation ("Citgo"). Citgo now moves to dismiss pursuant to Rule 12(b)(6) and to compel arbitration. For the following reasons, Citgo's motion is denied.

## FACTUAL BACKGROUND

      BS Sun is the owner of the "M/V STINICE" (hereinafter referred to as the "STINICE" or the "vessel"), a commercial tanker. (Pet.[1] ¶ 5). On April 4, 2002, BS Sun entered into a "time charter party" (hereinafter referred to as the "time charter) i.e., a charter for a finite period of time, with Pilot Enterprises, Inc. ("Pilot"). (Declaration of Zlatko Kabic,[2] dated March 27, 2006 ("Kabic Dec."), Ex. 2). Under the time charter, Pilot hired the vessel for two years, renewable at Pilot's option for up to two additional twelve month periods. (Kabic Dec., Ex. 2 ¶ 1). Although BS Sun has submitted no evidence of any extension of the time charter, it alleges that the vessel remained under charter to Pilot in November 2004, long after the initial term had expired. (Pet. ¶ 5).[3]

---

[1] Citations to "Pet." refer to the "Petition for Declaratory Judgment and Stay of Arbitration" dated January 27, 2006.
[2] Kabic was BS Sun's former "Secretary responsible for secretary tasks . . ." (Kabic Dec. ¶ 1). Kabic attests that he was employed by BS Sun "up to December 27, 2005" and that his declaration is based upon his personal knowledge as well as his review of BS Sun's files. (Id.)
[3] It appears that, pursuant to the terms of the time charter, a writing was not required to extend the duration of the time charter. (Kabic Dec., Ex. 2 ¶ 1). Rather, extensions were available at Pilot's option "declarable 30 days in advance." (Id.) Also, Pilot could extend the time charter to account for any periods for which the vessel was "off-hire," (i.e., out of commission). (Id. ¶¶ 1, 23). It is unclear how, or when (or even if)

1

The time charter provided for English jurisdiction over disputes arising thereunder, and allowed either party to elect arbitration before a single arbitrator in London. (Kabic Dec., Ex. 2 ¶ 57).

On November 24, 2004, European Product Carriers ("EPC"), "an apparent corporate alter ego" of Pilot, acting through Elka Ship Brokerage & Trading ("Elka"), a shipping agent, entered into a voyage charter with Citgo to transport a quantity of diesel oil. (Pet. ¶ 5, Ex. A). The voyage charter was not reduced to a signed writing, but was rather embodied in a "Final Recapitulation" of terms (hereinafter referred to as the "fixture recap" or "voyage charter"). (Pet. ¶ 6, Ex. A). The fixture recap incorporated "ASBATANKVOY" form charter party terms. (Id.) The voyage charter also provided for arbitration of any disputes arising thereunder in New York. (Pet., Ex. A).[4]

Whether BS Sun was actually a party to, or authorized, this voyage charter is at the core of the question presented by this motion. The fixture recap lists BS Sun as the vessel's "owner[]." (Id.) However, under "Owner's Mailing Address/ Phone/Etc." the fixture recap lists contact information for EPC and Elka rather than for BS Sun. (Id.) Furthermore, the fixture recap provides for payment by Citgo to a bank account in Pilot's name. (Id.) According to BS Sun, it "never participated in the negotiation or issuance of the fixture recap" and Pilot, Elka and EPC "were never provided with actual or apparent authority to act" on BS Sun's behalf. (Pet. ¶ 8). In addition, Kabic, a former BS Sun employee, attests that BS Sun never entered into any voyage charter with Citgo (the respondent herein whose oil was allegedly contaminated in the hold) and that "neither Pilot nor Elka have ever acted as broker or agent for" BS Sun. (Kabic Dec. ¶ 7). Nonetheless, according to the bill of lading signed by the vessel's master, the STINICE was loaded with oil at St. Croix on December 15, 2004 and sailed for Linden, New Jersey pursuant to the terms of the voyage charter. (Pet., Ex. B).

By letter dated December 8, 2005, Citgo demanded arbitration with BS Sun seeking damages arising from the alleged contamination of the diesel oil. (Pet. ¶ 10, Ex. C). On December 28, 2005, to preserve its rights in arbitration, BS Sun nominated an

---

the time charter was extended in this instance. However, on this motion, I must accept BS Sun's contention that the vessel remained under time charter to Pilot in November 2004.

[4] Specifically, clause 24 of the ABSTANKVOY form provides for arbitration in either London or New York depending upon the parties' prior election, and the fixture recap contained the provision "GA/ARB NYK US LAW" indicating arbitration in New York under U.S. law. (Pet., Ex. A).

2

arbitrator. (Pet. ¶ 11, Ex. D). On February 2, 2006, BS Sun filed this petition seeking a declaratory judgment that no valid arbitration agreement exists between BS Sun and Citgo as well as a permanent stay of the pending arbitration.

## **DISCUSSION**

In general, when ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe all factual allegations in the complaint in favor of the non-moving party. See Krimstock v. Kelly, 306 F.3d 40, 47 - 48 (2d Cir. 2002). The Court's consideration is normally limited to facts alleged in the complaint, documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken. See Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991). A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, establishes a "strong presumption of arbitrability." Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co., 263 F.3d 26, 29 (2d Cir. 2001). Generally, "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. . .'" Id. at 30 (quoting Moses H. Cone Memorial Hosp. v. Mercury Construction Corp., 460 U.S. 1, 24-25 (1983)). However, "[i]f the making of the agreement to arbitrate is placed in issue . . . the court must set the issue for trial." Sphere Drake, 263 F.3d at 30. To necessitate a trial on the question of arbitrability, "the party putting the agreement to arbitrate in issue must present 'some evidence' in support of its claim before a trial is warranted." Id. (citing Interocean Shipping Co. v. Nat'l Shipping & Trading Corp., 462 F.2d 673, 676 (2d Cir. 1972)). See also Denney v. BDO Seidman, L.L.P., 412 F.3d 58, 68 (2d Cir. 2005) ("We may not compel a party to arbitrate a dispute where there is a genuine issue as to whether the non-moving party actually agreed to arbitrate.")

To avoid arbitration, a party must allege that the contract containing the arbitration provision is "void," rather than merely "voidable." Id. at 32. "A void contract is one that produces no legal obligation[,]" such as "when parties fail to agree to essential

. . . terms. . ." Id. at 31. "[A] voidable contract is an agreement that 'unless rescinded . . . imposes on parties the same obligations as if it were not voidable.'" Id. (quoting Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 1:20, at 50 (4th ed. 1990)). For example, "an allegation of fraud in the inducement is a defense that renders contracts voidable, but not void." Id. As the Second Circuit explained in Sphere Drake:

> If a party alleges that a contract is void and provides some evidence in support, then the party need not specifically allege that the arbitration clause in that contract is void, and the party is entitled to a trial on the arbitrability issue pursuant to 9 U.S.C.A. § 4[5] . . . . However, . . . if a party merely alleges that a contract is voidable, then, for the party to receive a trial on the validity of the arbitration clause, the party must specifically allege that the arbitration clause is itself voidable.

Id. at 32. See also Denney, 412 F.3d at 67-68.

"[A] nonsignatory party may be bound to an arbitration agreement if so dictated by the ordinary principles of contract and agency." Thomson-CSF, S.A. v. American Arbitration Association, 64 F.3d 773, 776 (2d Cir. 1995). To bind a principal to a contract, a putative agent must be vested with actual or apparent authority. See Herlofson Mgmt. A/S v. Ministry of Supply, Kingdom of Jordan, No. 88 Civ. 7542, 1991 U.S. Dist. LEXIS 6966, *18 (S.D.N.Y. May 22, 1991). If an agent lacks such authority, any agreement entered into on behalf of a principal "is void – 'it never came into legal existence.'" Ministry of Industry & Trade v. S. Kasmas & Bros., Ltd., No. 01 Civ. 3575, 2001 U.S. Dist. LEXIS 13878, *6 (S.D.N.Y. Sept. 7, 2001) (quoting Sphere Drake, 263 F.3d at 32)).

Here, BS Sun has made a *prima facie* showing that it was not a party to the contract with Citgo, i.e., the voyage that brought the allegedly contaminated diesel fuel to New Jersey. According to BS Sun, since Pilot had no authority to bind BS Sun to any

---

[5] 9 U.S.C.A § 4 provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . [U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."

voyage charter, BS Sun cannot be compelled to arbitrate in accordance with the terms of the voyage charter between Citgo and Pilot. In support of its position, BS Sun has submitted the time charter between it and Pilot, as well as the Kabic declaration. (Kabic Dec. ¶ 1, Ex. 2). Kabic represents that BS Sun had time chartered the vessel to Pilot (although it is unclear when and how the time charter was extended past its termination date), that BS Sun did not participate in any way in the negotiation of the voyage charter with Citgo, and that BS Sun never authorized Pilot or Elka to "enter into any charter parties on [BS Sun's] behalf." (Kabic Dec. ¶¶ 3-4, 7).[6] This constitutes "some evidence" that Pilot and Elka acted without actual or apparent authority in entering into the voyage charter on behalf of BS Sun. See Sphere Drake, 263 F.3d at 33 ("Because [appellant] has presented some evidence that [putative agent] had neither actual or apparent authority to enter into the . . . contract—and that the contract is thus void—it has put the making of the agreement . . . in sufficient issue as to warrant a trial" on the enforceability of the arbitration clause); Kasmas, 2001 U.S. Dist. LEXIS 13878, * 7-8 (same). While Pilot may have had the authority as time charterer to engage the STINICE in a voyage charter, BS Sun has made a sufficient showing that Pilot had no authority to bind BS Sun to the terms of the voyage charter that prompts this motion.

In response, Citgo argues that: 1) the voyage charter specifically lists BS Sun as the vessel's owner; 2) BS Sun acknowledged the voyage charter by loading Citgo's oil at St. Croix; and 3) Kabic's declaration is insufficient because it attests to facts outside his personal knowledge. These arguments are unavailing.

The fact that the voyage charter refers to BS Sun as the owner of the STINICE is immaterial. It does not vitiate BS Sun's contention that Pilot, EPC and Elka negotiated the fixture recap without any authority to bind BS Sun to its terms. In addition, BS Sun presumably loaded Citgo's cargo at the direction of Pilot, to whom it contends the vessel was time chartered. According to BS Sun, it was obliged to carry any cargo that Pilot directed it to load, although this performance does not indicate BS Sun's accession to the terms of the voyage charter or the arbitration provision contained therein. Finally, Kabic

---

[6] While it is generally improper to consider documents not appended to the initial pleading or incorporated in that pleading by reference in the context of a Rule 12(b)(6) motion to dismiss, it is proper (and in fact necessary) to consider such extrinsic evidence when faced with a motion to compel arbitration. See Sphere Drake, 263 F.3d at 32-33 (vacating in part district court's order compelling arbitration based on testimonial affidavit submitted by appellant).

attests that his declaration is based upon his "personal knowledge and [his] review of" BS Sun's files. (Kabic Dec. ¶ 1). This is a sufficient basis to support Kabic's factual assertions.

Finally, I note that I have not determined that BS Sun is entitled to a declaratory judgment or a permanent stay of arbitration. Further discovery is necessary regarding, *inter alia*, the relationship between BS Sun, Pilot and Elka, the extension of the time charter between BS Sun and Pilot, and the circumstances surrounding the negotiation of the voyage charter in question before any final determination on arbitrability can be made. For now, since BS Sun has adduced "some evidence" that it is not bound by the terms of the voyage charter, Citgo's motion to dismiss and to compel arbitration must be denied.

## CONCLUSION

For the foregoing reasons, Citgo's motion to dismiss and to compel arbitration is DENIED. The parties shall proceed immediately to engage in relevant discovery. All discovery shall be concluded by September 21, 2006. The parties are directed to appear for a pre-trial conference in my chambers on September 21, 2006 at 4:00 p.m. to set a schedule for any further dispositive motions and trial. The Clerk of the Court is directed to close this motion and to remove it from my docket.

**SO ORDERED.**
**August ___, 2006**
**New York, New York**

U.S.D.J.

6